J-S29002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3329 EDA 2017 |

Appeal from the Decree Entered September 7, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000465-2016,
FID: 51-FN-001123-2014

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 21, 2018**

Appellant, L.C. ("Father") appeals from the decree entered on September 7, 2017, in the Court of Common Pleas of Philadelphia County, involuntarily terminating the parental rights to his minor, dependent son, J.A.W. ("Child"), born in June 2013, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), and (b), and the order changing Child's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.[1] We affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] By separate decree entered on the same date, the trial court involuntarily terminated the parental rights of biological mother, M.R. ("Mother"), and
*(Footnote Continued Next Page)*

The trial court has set forth the factual background and procedural history of this case in its Opinion. **See** Trial Court Opinion, 1/3/18, at 2-4. We adopt the trial court's recitation for purposes of this appeal, and we set forth herein only those facts, as found by the trial court, that are necessary to understand our disposition of the appeal.

Father and Mother are not married. Father is not listed on Child's birth certificate. Mother has three minor children, D.E.W., Jr., D.B.W., and J.R.W., who are not Father's biological children.[2]

On March 24, 2014, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Mother abandoned her four children. The GPS report also purported that: (1) Mother had no contact with the children for over a month; (2) the children had not been seen by a doctor for regular checkups; (3) the children had not been enrolled in school; and (4) Mother's whereabouts were unknown. On May 20, 2014, DHS obtained an Order for Protective Custody ("OPC") for the children. At the shelter care hearing on May 22, 2014, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. On

_(Footnote Continued)_ ──────────────

changed Child's permanency goal to adoption. Mother is not a party to this appeal nor did she file a separate appeal.

[2] On June 10, 2016, Mother's parental rights were involuntarily terminated as to D.E.W., Jr., D.B.W., and J.R.W., who are not part of this appeal.

September 9, 2014, the trial court adjudicated Child dependent and committed him into the care of DHS.

At a permanency review hearing on February 5, 2016, Father presented himself as the possible biological father of Child, and the trial court ordered a paternity test. Testing confirmed Father was the biological father of Child. The trial court took notice of the paternity test results, and the goal change to adoption for Child was put on hold so that Father could reunify with Child.

At the permanency review hearing on September 9, 2016, Father was referred to the Clinical Evaluation Unit ("CEU") for assessment, dual diagnosis and three random drug screens. Father was also referred for anger management and parenting classes. On March 7, 2017, the Community Umbrella Agency ("CUA") developed a single case plan ("SCP") for Father. Father's main SCP objectives were: (1) to participate in three random drug screens prior to his next court date; (2) to enroll in anger management classes; (3) to attend supervised biweekly visits with Child; and (4) to complete parenting classes.

On August 21, 2017, DHS filed petitions to involuntarily terminate Mother's and Father's parental rights to Child, and change Child's permanency goal to adoption. On September 7, 2017, the trial court held a hearing on the petitions. At the hearing, Child was represented by a guardian *ad litem* and child advocate. DHS presented the testimony of

Michael Genery, CUA case manager. Father, represented by counsel, testified on his own behalf. On the same day, the trial court entered its decree involuntarily terminating Father's parental rights, and its order changing Child's permanency goal to adoption.

Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issues for our review.[3]

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father pursuant to 23 Pa.C.S. 2511(a)(1), where Father presented evidence that he repeatedly tried to perform his parental duties and was denied contact with his son.
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father pursuant to 23 Pa.C.S. 2511(a)(2), where Father presented evidence that he has remedied his situation by completing parenting classes, participating in mental health treatment, and maintaining

---

[3] In his concise statement of errors complained of on appeal and appellate brief, Father did not challenge the trial court's order changing Child's permanency goal to adoption. Thus, we find this issue waived. ***See***, ***e.g.***, ***Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa. Super. 2006).

In his brief, Father stated his issues on appeal somewhat differently from his Rule 1925(b) Statement filed with his notice of appeal. To the extent Father addresses subsections (a)(5) and (8) in his Rule 1925(b) Statement, but not in his brief, Father has waived any challenge to the termination under these subsections. ***See Krebs***. Nevertheless, it is apparent from the termination decree that, although the termination petition sought termination under subsections (a)(5) and (8), the trial court did not terminate Father's parental rights under subsections (a)(5) and (8) in any event.

appropriate housing, which shows he now has the present capacity to care for his child.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Father pursuant to 23 Pa.C.S. 2511(b) where evidence was presented that established Father visited consistently up until he was unfairly denied visitation with his son.

Father's Brief, at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

We may affirm the court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). We will analyze the court's decision to terminate under § 2511(a)(2) and (b). Subsection (a)(2) provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

>incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
>. . .

23 Pa.C.S.A. § 2511(a)(2).

>In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002)).

A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***See In re A.L.D.***, 797 A.2d at 337. And a parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***See id***., at 340.

Here, the court concluded that there was clear and convincing evidence to terminate Father's parental rights pursuant to subsection (a)(2). The court found the testimony of the CUA case manager, Mr. Genery,

- 7 -

credible and afforded it great weight. The court noted that Child was adjudicated dependent on September 9, 2014. The court opined that the record demonstrated Father's ongoing inability to provide care for or control of Child as well as Father's failure to remedy the conditions that brought Child into care. The court determined that Father made insufficient efforts to meet his SCP objectives, which included court-ordered random drug testing, anger management classes and supervised visitations with Child.

Father, however, contends that the trial court abused its discretion and erred as a matter of law in terminating his parental rights because there was no competent evidence to satisfy subsection (a)(2). Father avers that he has cooperated with DHS/CUA, and has substantially completed his SCP goals. Father points out that he has completed parenting classes, engaged in mental health treatment, and maintained a safe and stable home for Child. Father avers that the evidence demonstrates his ability to presently care for Child. Additionally, he complains that he was denied contact with Child due to untimely allegations he threatened Child's foster mother. Father submits that DHS failed to perform reasonable efforts to reunite Father with Child. Father is mistaken.

Our review of the record supports the trial court's decision. During the termination hearing, Mr. Genery testified that he was the current CUA case manager for the family since April of 2017. Mr. Genery testified that he became familiar with the family's case history by speaking to the former

case manager, viewing all of the documents regarding the case and meeting Child's foster mother. Mr. Genery testified that Child came into foster care on May 22, 2014. He informed the court that Child currently lives in a pre-adoptive home with his foster mother and half-siblings.

Mr. Genery stated that a court-ordered DNA test conducted on March 1, 2016, revealed that Father was Child's biological father. Mr. Genery testified that Father's SCP goals were: (1) to participate in bi-weekly supervised visits with Child at the agency; (2) to partake and comply with mental health services; (3) to comply with court-ordered CEU drug screenings; (4) to attend drug and alcohol treatment; (5) to attend parenting classes; (6) to participate in anger management at Menergy; (7) to provide pay stubs for employment; and (8) to comply with CUA services.

Mr. Genery testified that Father was diagnosed with schizophrenia. Mr. Genery stated that he spoke with Father two or three times about partaking in mental health services. Father told him that he would handle it himself; however, to date, Father never provided him with documentation that he enrolled in mental health services.

Mr. Genery testified that he has concerns about Father's mental stability. Mr. Genery stated that when he approached him before the commencement of the termination hearing, Father seemed like he did not know who he was even though they have spoken several times regarding his SCP goals in the past. Mr. Genery also testified that Father behaved in an

aggressive and unsafe manner toward Child and Child's foster mother during a supervised visit on June 23, 2017. Mr. Genery informed the court that Father has not been permitted supervised visits with Child after the incident on June 23, 2017 because Child stated he was afraid of Father and did not wish to reside or visit with Father.

Mr. Genery also stated that one of Father's objectives is to comply with CUA services, which entails continuing his SCP goals, and communicating with him about his progress. Mr. Genery testified that, despite reaching out to Father and Paternal Grandmother several times, he has not spoken to Father since June 24, 2017, the day after the incident with foster mother and Child.

Mr. Genery stated that with regard to Father's drug and alcohol objective, the trial court ordered CEU drug screens. He testified that he tried to send Father for CEU drugs screens several times, but Father never went. Each time he tried to send him for a drug screen, Father would tell him the place was closed. Mr. Genery testified that since he has been the case manager, Father has not completed his court ordered CEU screens or engaged in any drug and alcohol treatment.

Regarding Father's parenting objective, Mr. Genery stated that Father informed him that he was attending parenting classes; however, Father never signed release forms or provided him with any information in which he could verify Father's actual attendance or confirm he completed the required

classes. Mr. Genery further testified that Father was to attend anger management at Menergy. Mr. Genery stated that Father failed to attend three scheduled intake appointments. Mr. Genery informed the court that Father did show up to the fourth intake appointment; however, Menergy believed he was intoxicated and Father left halfway through it. Mr. Genery never received any notification that Father returned to Menergy. Mr. Genery stated that Menergy then opted to deny Father services due to the fact he was not compliant.

Mr. Genery stated that Father was also required to provide pay stubs as proof of his employment objective. Mr. Genery testified that Father informed him that Father was unemployed, and that Father never informed him that Father's employment status changed. Mr. Genery also stated that Father lives with Paternal Grandmother. Mr. Genery visited Paternal Grandmother's house in May of 2016, finding it an appropriate house for Child. Due to Father's failure to comply with his SCP objectives for mental health, drug and alcohol abuse, and employment, Mr. Genery does not believe Father would be able to meet Child's needs as a parent, help Child deal with his own emotional state or provide financial stability.

Father admitted that he thought he was Child's biological father when Child was first born, but did not become involved until 2016 after Child was in foster care for about two years. Father testified that, after the paternity

test confirmed he was Child's biological father, CUA advised him about his SCP goals.

Father also testified that he suffers from both schizophrenia and bipolar disorder. Father produced an undated letter, stating he receives outpatient therapy and medication at Mental Health Partnerships. Father stated that he received inpatient treatment at Mental Health Partnerships about three years ago. Father testified that he goes to therapy when his medication is running low.

Father also submitted a certificate dated June 22, 2017 that he completed the parenting program at Concillio. Father stated that he has not visited Child since June 23, 2017 due to the misunderstanding between him and Child's foster mother. Father claimed that foster mother lied about the incident, which cost him his visits with Child. Father testified that he is not currently employed. Father also testified that, since the last court hearing, his cell phone was stolen, and Father was unable to get in contact with Mr. Genery to provide a new cell phone number.

At the conclusion of the termination hearing, the court found Mr. Genery knowledgeable about Child, the history of the case, and his foster placement. The court deemed Father not credible pertaining to why he missed certain SCP objectives. The court acknowledged that Father completed his parenting objective, but noted Father failed to make anyone aware of this achievement prior to the termination hearing. The court found

that Father never completed his mental health objective, as Father attends Mental Health Partnerships for medical management for his medication and not for therapy, which is needed given that he received inpatient therapy three years ago. The court also noted that Father failed to completed anger management classes as he missed three appointments at Menergy. The court further determined that Father did not comply with his drug and alcohol treatment as Father is in violation of the court order for CEU drug screens. The court concluded that DHS met its burden by clear and convincing evidence that termination of Father's parental rights was warranted under subsection (a)(2).

Father's arguments regarding subsection 2511(a)(2) essentially seek for us to make credibility and weight determinations different from those of the trial court. We cannot do that. The record reveals that Father did not make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. The record also demonstrates that Child has been in foster placement since approximately May 2014, at which time he was almost one year old. By the time of the termination hearing, Child had been in foster placement approximately three years and four months, and is now four years old.

Father admitted that he was aware that he might be Child's biological father at the time of Child's birth—but he made no efforts to find out until March 2016. After a paternity test confirmed Father was Child's biological

father, Father failed to obtain employment, maintain communication with Mr. Genery, participate in mental health therapy, attend anger management classes, and complete a CEU drug screen test. Also, Father engaged inappropriately towards foster mother in front of Child, causing his visitations to be suspended. Father did not engage in reasonable efforts to reunify with Child, as he did not comply with all of his SCP objectives.

Accordingly, we find that competent evidence in the record supports termination of Father's parental rights pursuant to subsection (a)(2) in that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being. The causes of Father's incapacity, neglect, or refusal cannot or will not be remedied in that the record evidence indicates that Father will not be able to provide essential parental care to Child at any time in the foreseeable future. Thus, the trial court did not abuse its discretion in terminating Father's parental rights under subsection (a)(2).

To the extent that Father argues that DHS did not engage in reasonable efforts to help him reunify with Child, this argument is without merit. When reviewing a termination decree on appeal, we do not consider whether DHS made reasonable efforts. Our Supreme Court has rejected the argument that the provision of reasonable efforts by the county children's

services agency is a factor in termination of the parental rights of a parent to a child. *See In re D.C.D.*, 105 A.3d 662, 673-674, 676 (Pa. 2014).

We next determine whether termination was proper under § 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations, brackets and quotation marks omitted; brackets added). "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

The trial court found that there was clear and convincing evidence that Child has a parental bond with his foster mother and that termination of Father's parental rights would not have any detrimental effect on Child. The

court noted that Father loves Child, but ultimately concluded that termination of Father's parental rights would be in Child's best interest pursuant to subsection (b).

Father, however, argues that the trial court erred and/or abused its discretion. He claims that the evidence established he visited Child consistently up until he was unfairly denied visitation and the opportunity to be part of Child's life. And he contends that, had he been allowed to continue to visit Child or allowed to participate in family therapy with Child, their relationship would have flourished. Father, thus, submits that termination of his parental rights does not serve the physical and emotional needs of Child. We disagree.

Mr. Genery informed the court that Child currently resides with foster mother and his half-siblings. Child has resided with foster mother since he was committed into DHS's custody in 2014. Mr. Genery testified that foster mother provides a stable home for Child. Mr. Genery found that Child looks to foster mother to fulfill his needs and foster mother meets his needs. Mr. Genery testified that Child has both a positive relationship and strong bond with foster mother as Child is practically attached at her hip.

Mr. Genery opined that reunification is not appropriate given that Child fears Father. Mr. Genery stated that he does not think Father is able to adequately meet Child's emotional and developmental needs due to concerns regarding Father's mental health, drug and alcohol abuse and lack

of employment. Mr. Genery opined that Child would not suffer irreparable harm if Father's parental rights were terminated. Mr. Genery opined that it was in Child's best interests to be adopted by his foster mother, and live with his other half-siblings.

Based on the foregoing testimonial evidence and the totality of the record evidence, we discern no abuse of discretion or legal error by the trial court in concluding that termination of Father's parental rights would best serve Child's needs and welfare. The trial court thoroughly considered Child's bond with Father, and the effect of severing that bond. The record supports the trial court's determination that there is no bond or substantial relationship between Child and Father that, if severed, would cause a detrimental effect on Child.

The evidence also establishes Child's desire to remain at his current foster home where he has consistency and permanency. While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d at 1121. As such, the trial court correctly prioritized Child's emotional well-being and his need for safety, permanency and stability over Father's wishes.

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights pursuant to § 2511(a)(2) and (b), we affirm the decree of the trial court.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/18